648 So.2d 73 (1994)
Deborah BERDIN a/k/a Deborah McClinton
v.
STATE of Mississippi.
No. 92-KA-0467.
Supreme Court of Mississippi.
December 21, 1994.
*75 George T. Kelly, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
SULLIVAN, Justice, for the Court:
Deborah McClinton was charged in Cause No. 22,311 with felony shoplifting for the theft of a wedding dress in Washington County, Mississippi. Berdin appeared before the court using her maiden name, McClinton, and entered a plea of guilty on November 4, 1991. Berdin was sentenced to three years in prison, but the court suspended her sentence and placed her on probation. The court ordered Berdin to pay $250 restitution, $500 in lieu of attorney's fees, and $163.50 in court costs as conditions of her probation.
On December 17, 1991, Berdin, along with her husband, was charged with grand larceny in Cause No. 22,405 for the theft of a wedding ring. Berdin allegedly committed the offense on August 14, 1991, a few months prior to entering her plea of guilty for Cause No. 22,311. When Berdin appeared before the court on March 27, 1992 for Cause No. 22,405, she entered another plea of guilty, this time using her married name, Berdin. The trial judge explained the maximum sentence for grand larceny, and the rights Berdin would be waiving by entering a plea of guilty. Berdin affirmed that she was not threatened, coerced or under the influence of drugs. After accepting her plea of guilty, the trial judge discovered that Berdin was on probation having previously entered a plea of guilty to Cause No. 22,311 under her maiden name, McClinton. Defense counsel, Mr. Kelly, explained that he was under the impression that the state would recommend a dismissal if Berdin had abided by her conditions of probation and her husband entered a guilty plea as well. The State affirmed that Kelly's assumption was correct, but made no recommendations on the grounds that Berdin was delinquent in her probation payments. The court noted that Berdin had only paid $40 towards the cost assessed to her in the previous conviction. Berdin's probation was therefore revoked, and the trial judge announced the reinstatement of Berdin's three year sentence for the previous felony shoplifting charge. The court also sentenced her to five years imprisonment for grand larceny to run consecutive to the reinstated three years, but suspended four of those years. Mr. Kelly then moved to withdraw the plea of guilty in Cause No. 22,405, but the trial judge denied his request. The trial court entered an Order of Revocation of Probation stating that Berdin "[m]ade only one payment toward those sums ordered by the Court" in violation of probation.
On April 10, 1992, Berdin filed a Petition for Writ of Habeas Corpus for Post-Conviction Relief, claiming that her probation had been improperly revoked. Berdin charges that the revocation was in violation of the Eighth and Fourteenth Amendments because there was no inquiry into her ability to make the probation payments, no Affidavit filed declaring her in violation, no notice to her that a probation revocation would be considered at the time of the plea in Cause No. 22,405, no specific payment schedule provided *76 by the probation order, and no inquiry as to whether she had made the probation payments.
The trial court held a hearing on April 17, 1992. Berdin's probation officer, Gary Odom, testified that he told Berdin she had to pay $20 a month in supervision fees. His records showed that he had not ordered any other payment schedule. Berdin testified that it was her understanding that she was to pay $20 a month, but fell behind because she had lost her job while in jail. Berdin claimed she had made $60 in payments to the probation officer contrary to the record which showed payment of only $40. Berdin also testified that she was currently seeking work so that she could afford to make her overdue payments. The trial judge then explained that it had revoked probation not because of her failure to make payments, but because she appeared before the court again and entered a plea of guilty to another crime. Defense counsel, Kelly, argued that neither he nor the District Attorney knew there were two cases against Berdin because Berdin had used different last names on each charge. On May 4, 1992, the trial judge denied Berdin's petition for post-conviction relief.
Berdin has appealed, claiming her probation revocation for Cause No. 22,311 was without due process, and that the sentence in Cause No. 22,405 was without due process because the court failed to determine whether Berdin's plea of guilty was voluntarily and intelligently entered.

STATEMENT OF THE LAW

I. Was Berdin's probation revocation in Cause No. 22,311 in violation of her due process rights?
Mississippi Code Annotated § 47-7-37 sets forth the procedure for probation revocation in this State. This statute meets the minimal requirements of due process as long as it is construed as inhering the due process requirements set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Riely v. State, 562 So.2d 1206, 1211 (Miss. 1990); Grayson v. State, No. 91-KP-01215, slip op. 7-8, ___ So.2d ___, ___-___ (Miss. 1994). Even though § 47-7-37 does not expressly state the requirements set forth in Morrissey and Gagnon, this Court will give the statute this construction in order to save its constitutionality. Riely, 562 So.2d at 1211. Morrissey requires both a preliminary hearing and a final hearing to determine whether parole will be revoked. Morrissey, 408 U.S. at 485-90, 92 S.Ct. at 2602-05. Gagnon applied the same due process requirements of Morrissey to probation revocations. Gagnon, 411 U.S. at 782, 93 S.Ct. at 1759-60. The court must adhere to the following procedures to have a proper preliminary hearing: 1) a minimal inquiry into the alleged violation near the time and reasonably near the place of the violation so that "information is fresh" and "sources are available"; 2) a determination that "reasonable ground exists for revocation ... by someone not directly involved in the case" although they "need not be a judicial officer"; 3) notice of the hearing and a statement that the purpose is to determine if there is probable cause to believe a violation has been committed; 4) "the notice should state what ... violations have been alleged"; 5) the defendant should be allowed to bring all relevant information and to "speak in his own behalf"; 6) the defendant may request that the people who have given information on which revocation is based be questioned in his presence; 7) the hearing officer shall prepare a summary of the responses of the defendant or evidence in support of the defendant's case; 8) the hearing officer shall determine whether there is probable cause to "hold the [defendant] for the final decision"; and, 9) the decision maker should express the grounds for holding the defendant for a final determination. Riely, 562 So.2d at 1210 (citing Morrissey, 408 U.S. at 485-87, 92 S.Ct. at 2602-03). The following procedural requirements are necessary for the final revocation hearing: 1) written notice of the probation violation: 2) disclosure of evidence against the probationer; 3) opportunity for defendant to testify and to present witnesses and other evidence; 4) right to confront and cross-examine witnesses; 5) "neutral and detached" hearing board; and, 6) a written statement of reason for revocation. Riely, *77 562 So.2d at 1210 (citing Gagnon, 411 U.S. at 786, 93 S.Ct. at 1761-62). In the present case, the court simultaneously sentenced Berdin for Cause No. 22,405 and revoked probation on charge 22,311. There was no preliminary hearing regarding Berdin's alleged failure to comply with her probation order. Although her arrest for Cause No. 22,405 occurred before she was placed on probation, some type of hearing regarding probation revocation should have been held as soon as the court learned of her prior arrest under her maiden name. No such hearing was held, and the court simply revoked her probation immediately after she entered her plea of guilty for Cause No. 22,405. Furthermore, there is no record of Berdin receiving notice of a violation. No one filed an affidavit claiming she was in violation of her probation conditions. From the record, it appears that Berdin had no clue that she was in violation of the probation order. When the state made no recommendation as to a sentence for Cause No. 22,405, Berdin's attorney, Kelly, announced that he had been led to believe that the district attorney's office would consider a dismissal after Berdin pled guilty. Kelly clearly expected the Assistant District Attorney to recommend the dismissal on the belief that Berdin was in compliance with her probation conditions. This belief stemmed from the complete absence of actual notice that the State would consider probation revocation immediately upon accepting her plea of guilty for Cause No. 22,405. Without written or actual notice, the court reinstated the three year sentence that had been suspended in Cause No. 22,311. The disparity between the court's statements when probation was revoked, the written and signed Order of Revocation, and the court's after-the-fact explanation at the hearing for post-conviction relief demonstrate Berdin's lack of actual notice. The trial judge violated the procedural due process requirements of Morrissey, Gagnon, and Mississippi Code Annotated § 47-7-37. The state, citing Gagnon and Riely, concedes it was "clear that [Berdin] may well have received less than the minimal level of due process." Regardless of the actual reason Berdin's probation was revoked, it is clear that Berdin's due process rights associated with revocation of her probation were ignored.
There was substantial confusion in the record concerning the reason the court revoked probation in the first place. Before the court imposed a sentence for Cause No. 22,405, Kelly announced his understanding that the State would recommend a dismissal on the condition that Berdin enter a plea of guilty to the same charge, and that Berdin was complying with the probation terms from charge 22,311. The Assistant District Attorney replied that this assumption was correct, but made no sentencing recommendation, arguing that Berdin had not abided by the terms of probation. The court concluded:
In the previous case, the court suspended a three-year sentence and placed Mrs. Berdin on probation on condition that she make restitution in the amount of $250 and pay $500 in lieu of attorney's fees and pay all court costs, and that sentence was imposed on November 13, 1991, and Ms. McClinton has made one $40 payment on the court costs, assessments, and restitution ordered by the court. That payment was made yesterday. So I have no choice but on the entry of a plea of guilty to the grand larceny but to order that your probation in Cause No. 22,311 be revoked and that you be ordered to serve a term of three years in the custody of the Department of Corrections.
From this dialogue between the court, Kelly, and the Assistant District Attorney, Berdin's failure to pay the probation fine appears to have been the main reason the court revoked probation. This conclusion is supported by the Order of Revocation of Probation, which states only the following probation violation: "[m]ade only one payment toward those sums ordered by the Court in condition L."
In spite of this order, the trial judge stated during the post-conviction relief hearing that he revoked her probation because she had appeared before the court and entered a plea of guilty after having been put on probation, not because she failed to make her payments. Although the record strongly supports the finding that Berdin's financial inability to pay her probation fine was the main reason her probation was revoked, the court did state *78 that it had no choice but to revoke probation "on the entry of a plea of guilty to the grand larceny." Therefore, the guilty plea may have been the reason the court revoked probation despite the appearance of the record. In the case of Horton v. State, 584 So.2d 764 (Miss. 1991), we acknowledged that a "defective guilty plea transcript may be rehabilitated and cured by evidence obtained in a post-conviction hearing." Horton, 584 So.2d at 768; Youngblood v. State, 542 N.E.2d 188 (Ind. 1989). Similarly, the judge attempted to rehabilitate a somewhat ambiguous trial record. Because of this apparent confusion over the actual basis of Berdin's probation revocation, we must discuss the consequences of either reason with respect to possible additional due process requirements.
With regard to the claim that Berdin failed to pay her probation fines, Berdin testified that Gary Odom, the probation officer, ordered her to pay $20 a month in supervision fees. Odom substantiated that testimony and testified further that he did not remember ordering any other payments, and could not find any notations in his file saying otherwise. Therefore, the record supports the finding that the court provided Berdin with a specific payment schedule, at least $20 a month in supervision fees. While there is a disagreement as to how much Berdin had paid when the court revoked her probation, Berdin concedes that she fell behind in her payments. Furthermore, she made no payments on the restitution fines. Even though there is no doubt Berdin violated probation by failing to make the proper payments, "[i]t is not incumbent upon the State in a proceeding of this kind to show beyond a reasonable doubt that the defendant has violated the conditions of the suspension order." Murphy v. Lawhon, 213 Miss. 513, 517, 57 So.2d 154 (1952); see Wallace v. State, 607 So.2d 1184, 1189-90 (Miss. 1992).
If the trial judge revoked Berdin's probation because of her failure to pay the fines imposed, then the procedural mandates of Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), are controlling. Bearden held that the Due Process Clause requires a court to inquire into the reasons why a defendant failed to pay a fine or restitution when failure to pay is the basis for the possible revocation of a defendant's probation. Bearden, 461 U.S. at 672, 103 S.Ct. at 2072-73. A willful refusal to pay can result in probation revocation and imprisonment, but a failure to pay after "sufficient bona fide efforts legally to acquire the resources to pay" would require the court to consider alternative measures of punishment. Id. The Bearden Court found the distinction between "willful refusal" and "inability" to be critical since the deprivation of a probationer's "conditional freedom" based on financial inability "would be contrary to the fundamental fairness required by the Fourteenth Amendment." Id. at 672-73, 103 S.Ct. at 2073. This specific rule of fundamental fairness is reflected in Miss. Code Ann. § 99-19-20(2). It mandates that if the court determines a defendant is "financially unable to pay a fine," then the "defendant shall not be imprisoned." Miss. Code Ann. § 99-19-20(2) (Supp. 1993). Here, as a preliminary matter, the trial court failed to determine why Berdin was delinquent with her payments. Kelly attempted to point this out to the trial judge, but was disregarded once the court sentenced Berdin and revoked her probation. This inquiry is mandated by the United States Constitution. The failure to conduct this type of inquiry is a due process violation. In Cassibry v. State, 453 So.2d 1298 (Miss. 1984), we vacated an order revoking probation and ordering the defendant imprisoned because the defendant's financial inability was the only reason for nonpayment. Cassibry, 453 So.2d at 1300. This Court determined that since alternative measures of punishment such as public service work and payment installment plans were available, the trial judge had improperly imprisoned the defendant without a consideration of the alternatives. Id.; see Miss. Code Ann. § 99-19-20(1) (1994) (authorizing alternative methods of enforcing payment of fines).
At the hearing on Berdin's motion for post-conviction relief, Berdin's testimony indicated that her financial inability was the reason that she had failed to pay the $913.50 in fines imposed as a condition of probation. She testified that she lost her job while in jail. She had sought employment at Heritage *79 Manor in Indianola as a medical assistant and a licensed phlebotomist. She claimed that her husband had recently received a job at Delta Pride, but had only been working there for four weeks. Berdin testified that she had also sought employment at Delta Pride. Had the court inquired, it would have discovered that Berdin had financial difficulty in making her probation payments, and that she had engaged in bona fide efforts to obtain the money. This would have required the court to further determine which alternative measures of punishment would have been adequate. Only if Berdin failed or refused to comply with the alternative measures of punishment would the court have been able to order Berdin's imprisonment. See Miss. Code Ann. § 99-19-20(2) (1994) (allowing imprisonment of one financially incapable of paying fine only where defendant failed to comply with sentence under Miss. Code Ann. § 99-19-20(1)).
If the trial court revoked probation solely because she appeared before the court and entered a plea of guilty to a crime after having been put on probation for another crime, then another analysis would be warranted. Condition (a) of Berdin's probation Order stated that the suspension of her sentence was based on the condition that "[d]efendant shall hereafter commit no offense against the laws of this or any state of the United States, or of the United States." This language is derived from Mississippi Code Annotated § 47-7-35, which provides a non-exclusive list of items which a court may impose as conditions of probation. However, Berdin actually committed the second offense on August 14, 1991 which was nearly three months before being given probation on November 4, 1991 for the first offense. The issue becomes whether she violated her probation conditions by pleading guilty to a crime committed before being put on probation. Berdin argues that she did not violate the express language of condition (a). However, committing an offense should be interpreted as analogous to being convicted or given one's due process after having allegedly committed the act. It should be remembered that a conviction is not necessary for the court to revoke probation. Murphy v. Lawhon, 213 Miss. 513, 517, 57 So.2d 154 (1952) (probation violation need not be proven beyond reasonable doubt). The trial judge may revoke probation "upon a showing that the defendant has more likely than not violated the terms thereof." Wallace v. State, 607 So.2d 1184, 1190 (Miss. 1992). This result may have been the intent of the drafters of this condition. We find that Berdin violated condition (a) of her probation order by pleading guilty to charge 22,405. This basis for probation revocation would not, however, excuse the absence of the procedural due process requirements of Morrissey, Gagnon, and Mississippi Code Annotated § 47-7-37.
The State argues that Berdin's knowledge of her arrest on Cause No. 22,405 at the time the court suspended her sentence makes the immediate revocation her fault. In the case of Hamlin v. Barrett, 335 So.2d 898 (Miss. 1976), we found that the trial court properly revoked a suspended sentence and probation when it learned that the defendant lied when asked if he had any previous felony convictions. Hamlin, 335 So.2d at 899-900. Berdin's case is distinguishable in two ways. First, in Hamlin the defendant had a prior conviction such that the court had no authority under Mississippi Code Annotated § 47-7-33 to suspend sentence and order probation. Id. Berdin did not have a prior conviction, but merely a prior arrest. Secondly, the defendant in Hamlin made an affirmative "fraudulent and hollow promise" when asked about prior convictions. The trial court never asked Berdin about prior arrests, and Berdin never really had the opportunity to disclose her prior arrest. Berdin made no affirmative misrepresentations to the trial court. Berdin's attorney testified he had no knowledge of her arrest at the time she pled guilty in Cause No. 22,311. Accordingly, the trial court's immediate revocation of probation and reinstatement of the three year sentence can not be deemed proper on the basis of any affirmative misrepresentation.
At the hearing for post-conviction relief, the trial court concluded that the trial judge would not have given probation had it known of her second arrest. Whether or not that trial judge would have suspended the *80 sentence had he known of the second arrest can not be ascertained from the record. The trial judge certainly had the authority to place Berdin on probation, even with her prior arrest, since she had not yet been convicted. Cf. Miss. Code Ann. § 47-7-33 (not permitting probation where defendant has previous felony conviction). Sentencing is "purely a matter of trial court discretion" as long as it is within the statutory guidelines. Wallace, 607 So.2d at 1188. The court definitely had knowledge of Berdin's propensity to steal when it sentenced her to probation. When the court sentenced Berdin for charge 22,311, the court stated:
Now, if you are a habitual shoplifter, and you must be or else this indictment would not have it. This court believes that the public is entitled to some relief from you and ordinarily would give you some time to serve and at least let you think about your weakness for taking property that belongs to other people. I want to tell you if you get back  if you shoplift anymore and get caught, I am going to send you to the penitentiary.
Clearly the court was aware of Berdin's problems with shoplifting. Even with this knowledge, the court sentenced Berdin to probation. Further, knowledge of Berdin's second arrest could have been the basis for the statements regarding Berdin's habitual shoplifting problem. Therefore, it should not have been concluded with certainty that the trial judge would not have suspended the sentence had he known of the second arrest.
There was a clear violation of Berdin's due process rights when the trial court revoked her probation for Cause No. 22,311 without any notice and without a hearing. The procedure for probation revocation is set forth in Riely, and its requirements must be adhered to before a revocation of probation regardless of the reason. When failure to pay court imposed fines becomes a possible basis for a probation revocation, the trial court must also follow the mandate of Bearden and Miss. Code Ann. § 99-19-20(2), although Berdin's plea of guilty to Cause No. 22,405 alone would be sufficient grounds for finding she had violated the conditions of probation. We therefore must remand this matter to the Circuit Court.

II. Did Berdin voluntarily and intelligently plead guilty to larceny in Cause No. 22,405?
Both Berdin and the State raised issues under assignment number II that are procedurally barred. Berdin never raised this issue at the hearing for post-conviction relief. It is assigned as error for the first time in her brief. An assignment of error may not be raised for the first time on appeal. Collins v. State, 594 So.2d 29, 35 (Miss. 1992). Therefore, this issue is not properly before the court.
To properly raise the issue, Berdin would have been required to do so in a separate motion. Miss. Code Ann. § 99-39-9(2) states, "[a] motion shall be limited to the assertion of a claim for relief against one (1) judgment only. If a prisoner desires to attack the validity of other judgments under which he is in custody, he shall do so by separate motions." Miss. Code Ann. § 99-39-9(2) (Supp. 1993). The judgment in Cause No. 22,405 should have been raised at the trial level first, and it should have been raised in a separate motion since it concerns a separate judgment.
Without notice that the probation would be revoked automatically upon pleading guilty to another crime, Berdin was unaware that she would receive at least three years in the penitentiary instead of a possible dismissal. The failure of the trial judge to give any notice of the probation revocation rendered the plea of guilty to charge 22,405 involuntary and unintelligent. However, this court does not and can not reach the point as Berdin's claim is barred.
The State claims that despite the due process problems in this case, the trial judge should never have suspended four of the five years for Cause No. 22,405. Mississippi Code Annotated § 47-7-33 gives the court
the power, after conviction or plea of guilty, except... where the defendant has been convicted of a felony on a previous occasion in any court or courts of the United States ... to suspend the imposition *81 or execution of sentence, and place the defendant on probation as herein provided.
Regardless of the merits of the State's claim that the sentence could not be granted under § 47-7-33, the State's claim is also barred and the court can not and will not address it.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PITTMAN, J., not participating.