# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI
## NO. 97-CA-00753 COA

RICHARD SMITH A/K/A "BO HOG"                                    APPELLANT

v.

STATE OF MISSISSIPPI                                             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | MAY 20, 1997 |
| TRIAL JUDGE: | HONORABLE LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JO ANNE M. MCLEOD |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 12/18/1998 |
| MOTION FOR REHEARING FILED: | 12/31/98 |
| CERTIORARI FILED: | 3/19/99 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., HERRING, HINKEBEIN, AND KING, JJ.

HERRING, J., FOR THE COURT:

¶1. Richard Smith filed a motion for post-conviction relief in the Circuit Court of Lowndes County, Mississippi, after the court revoked his probation and imposed a previously suspended sentence for conspiracy to distribute cocaine. The circuit court denied Smith's requested relief, and he now appeals to this Court alleging that (1) he was deprived of his liberty interest without due process of law; and (2) his guilty plea was involuntary because he was not warned of the possible revocation of probation in connection with a separate, prior offense. We find that these assignments of error are without merit, and therefore, we affirm the trial court's dismissal of Smith's petition for post-conviction relief.

## A. THE FACTS

¶2. On May 25, 1995, Richard Smith pled guilty in the Circuit Court of Lowndes County, Mississippi, to the crime of conspiracy to distribute cocaine. The trial court sentenced Smith to a term of twenty years in the custody of the Mississippi Department of Corrections; however, the court suspended the sentence and placed Smith on probation for a period of five years. The court subjected Smith's probation and the suspension of his sentence to several conditions, including the following: "[The] Defendant shall hereafter commit no offense against the laws of this or any state of the United States."

¶3. On July 14, 1995, Smith entered a guilty plea in the Circuit Court of Clay County, Mississippi, to the charge of sale of cocaine. Smith allegedly committed the offense in August, 1994, nine months prior to entering his plea of guilty in the Circuit Court of Lowndes County for conspiracy to distribute cocaine. During the guilty plea arraignment, the trial court judge informed Smith of the maximum and minimum sentences for sale of cocaine and questioned whether Smith's plea was the result of threats, coercion, or other improper influences. The judge also explained to Smith that he would be waiving certain rights by entering a guilty plea to the charge. Smith admitted that he committed the offense, and he affirmatively answered the questions posed by the court.

¶4. After accepting Smith's second guilty plea, the trial court judge requested a sentencing recommendation from the State. The State suggested that Smith serve a term of three years in the custody of the Mississippi Department of Corrections based upon his cooperation in another investigation. Additionally, the State advised the judge in the presence of Smith that a motion to revoke the defendant's probation would be filed in the Circuit Court of Lowndes County at the conclusion of the current proceedings. After further questioning the defendant, the court followed the State's recommendation and sentenced Smith to three years in prison.

¶5. On August 24, 1995, the Circuit Court of Lowndes County, Mississippi, conducted revocation proceedings in open court. Although the trial court informed Smith of his right to a hearing, Smith, through his attorney, stated that he would "confess the petition" filed by the State. The court subsequently reviewed a copy of the Clay County conviction and took judicial notice of the court file. Thereafter, the court revoked Smith's probation and suspended sentence and ordered Smith to serve twenty years for conspiracy to distribute cocaine, to run consecutively to the three year sentence which Smith received in the Clay County Circuit Court.

¶6. Smith subsequently filed a petition for post-conviction relief, alleging that the trial court improperly revoked his probation and suspended sentence. Smith claimed that he was deprived of his liberty interest without due process of law since the revocation was based on an event that transpired prior to the imposition of his probation. He also asserted that his guilty plea to the first charge (conspiracy to distribute cocaine) was not voluntary because he was not warned of the possibility that his probation and suspended sentence would be revoked if he pleaded guilty to the second charge (sale of cocaine).

¶7. The trial court judge then directed the State to file an answer to Smith's petition for post-conviction relief. After reviewing the petition, the record, and other relevant documents, including the case of *Berdin v. State*, 648 So. 2d 73 (Miss. 1994), the trial court concluded that there were no "due process violations" and determined that there was no need for a hearing. Consequently, the court dismissed Smith's petition. He now appeals to this Court.

## B. THE ISSUES

¶8. Smith raises the following assignments of error on appeal which are taken verbatim from his brief:

**I. REVOKING SMITH'S PROBATION FOR CONDUCT WHICH OCCURRED PRIOR TO THE TIME THE SUSPENDED SENTENCE WAS IMPOSED DEPRIVES HIM OF LIBERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENT FOURTEEN AND MISSISSIPPI CONSTITUTION § 14.**

**II. THE FAILURE TO WARN THAT THE PROBATION WOULD BE REVOKED FOR CONDUCT WHICH OCCURRED IN THE PAST RENDERED THE GUILTY PLEA NOT KNOWINGLY AND INTELLIGENTLY MADE.**

## C. ANALYSIS

**I. DID THE TRIAL COURT DEPRIVE SMITH OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW?**

¶9. Smith contends that the trial court deprived him of his liberty without due process of law when the court revoked his probation and imposed a previously suspended sentence for conspiracy to distribute cocaine. He asserts that the trial court failed to inform him that the entry of a guilty plea to a separate, prior charge would violate the express conditions of his probation. Because the court allegedly failed to warn Smith that his prior misconduct could result in the revocation of his probation, Smith argues that his suspended sentence and probation should be reinstated by this Court.

¶10. Section 47-7-33, in conjunction with Section 47-7-35, of the Mississippi Code Annotated provides that the circuit or county court shall determine the terms and conditions of a defendant's probation and may alter or modify such conditions at any time during the probationary period. Miss. Code Ann. §§ 47-7-33 & 47-7-35 (Rev. 1993). The relevant statute sets forth a non-exclusive list of conditions of probation that the courts may impose, including the following: "[T]he probationer shall . . . [c]ommit no offense against the laws of this or any other state of the United States, or of the United States. . . ." Miss. Code Ann. § 47-7-35 (a) (Rev. 1993). Perhaps more important, Section 47-7-37 establishes the proper procedure for revocation of a defendant's probation. Miss. Code Ann. § 47-7-37 (Rev. 1993). Although the revocation statute has been attacked on the grounds that it did not afford a defendant his constitutional right to due process as delineated by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Mississippi Supreme Court has held that the statute complied with the minimal due process requirements by "inhering the . . . requirements set forth in *Gagnon* and *Morrissey*." *Riely v. State*, 562 So. 2d 1206, 1211 (Miss. 1990). Accordingly, the court upheld the constitutionality of the statute and directed the trial courts to conduct a preliminary and a final hearing before revoking a defendant's probation as mandated by the United States Supreme Court. *Id.*

¶11. Smith relies on *Artis v. State*, 643 So. 2d 533 (Miss. 1994) to support his contention that the trial court deprived him of his liberty without due process of law. In that case, the trial court sentenced the defendant to a term of twenty-five years for armed robbery and twenty years for manslaughter, with the sentences to run concurrently. However, the court suspended the majority of the defendant's sentences. *Id.* at 535. The court later revoked the defendant's suspended sentence after he had been convicted of a

subsequent crime. *Id.* The defendant then filed a motion for post-conviction relief, alleging that the revocation was improper because the court did not subject any portion of the suspended sentences to a period of probation or make the sentences contingent on certain terms or conditions. *Id.* at 534-35. The trial court denied this motion. On appeal, our supreme court held that the trial court violated the defendant's due process rights and reinstated the defendant's original suspended sentence. *Id.* at 538. The supreme court determined that "due process requires that the trial judge at least orally inform the defendant of the terms and conditions upon which his suspended sentence is contingent before it may be properly revoked for the violation of those terms and conditions." *Id.*

¶12. Contrary to Smith's assertions, we find that the facts in the case *sub judice* are distinguishable from the facts in *Artis*. In this case, the trial court suspended Smith's sentence, placed him on probation for a period of five years, and subjected Smith's suspended sentence to several conditions pursuant to Section 47-7-35 of the Mississippi Code. During the entry of his guilty plea, the court orally informed Smith of the conditions of his probation, and the court's order also set forth the following conditions:

(a) Defendant shall hereafter commit no offense against the laws of this or any state of the United States;

(b) Avoid injurious or vicious habits;

(c) Avoid persons or places of disreputable or harmful character;

(d) Report to the Department of Corrections, as directed by it;

(e) Permit the field officer to visit him at home, or elsewhere;

(f) Work faithfully at suitable employment, so far as possible;

(g) Remain within the specified area;

(h) Remain within the State of Mississippi, unless authorized to leave on proper application therefor;

(i) Support his dependants, and pay all costs herein;

(j) That he does hereby waive extradition to the State of Mississippi from any jurisdiction in or outside of the United States where he may be found and also agree that he will not contest any effort by any jurisdiction to return him to the State of Mississippi.

(k) Shall pay to the Department of Corrections the sum of $20 (twenty) per month by "certified check" or money order until discharged from supervision;

(l) And further, that he does not use beer or alcohol to excess at any time and will not use any type of illegal drug at any time. . . .

¶13. We find that the trial court informed Smith of the terms and conditions of his probation and suspended sentence. The court fully advised Smith that it would terminate his probation and impose the twenty year suspended sentence if he violated any of the court's terms and conditions. Thus, the question we must resolve is whether the trial court violated Smith's right to due process when it revoked his suspended sentence based upon an offense that occurred prior to the imposition of his probation and when the court's

express condition of probation stated that Smith "shall *hereafter* commit no offense against the laws of this . . . state." (emphasis added).

¶14. In *Berdin v. State*, 648 So. 2d 73, 75 (Miss. 1994), the supreme court considered a similar due process challenge to the revocation of a defendant's suspended sentence. The trial court initially suspended the defendant's sentence and placed her on probation after she entered a guilty plea to felony shoplifting. *Id.* As a condition of the defendant's probation, the court stated in its order that the defendant's suspended sentence was based upon the condition that she "shall hereafter commit no offense against the laws of this or any of the United States, or of the United States." *Id.* at 79. The defendant subsequently entered a guilty plea to a separate offense she allegedly committed a few months prior to entering her initial guilty plea and being given probation. *Id.* at 75. After accepting the guilty plea, the court discovered that the defendant was on probation for felony shoplifting. *Id.* Consequently, the court revoked the defendant's probation and reinstated the sentence for her previous shoplifting charge. *Id.*

¶15. On appeal, the defendant asserted that she did not violate the express language of her probation conditions because she committed the offense before she was placed on probation. *Id.* at 79. However, the supreme court rejected the defendant's argument and held that "committing an offense should be interpreted as analogous to being convicted or given one's due process after having allegedly committed the act." *Id.* The court noted that a conviction was not necessary for a trial court to revoke probation because a "trial judge may revoke probation 'upon a showing that the defendant has more likely than not violated the terms thereof.'" *Id.* (quoting *Wallace v. State*, 607 So. 2d 1184, 1190 (Miss. 1992)). Thus, we rule that Smith's assignment of error claiming the violation of his liberty interest without due process of law, to the extent that he claims that he did not violate the conditions of his probation, has no merit. It is noteworthy, however, that although the supreme court in *Berdin* found that the defendant's subsequent guilty plea violated the terms of her probation, the supreme court concluded that the trial court deprived the defendant of her due process rights when it revoked her probation without any notice or hearing on the issue. *Id.* at 80. Accordingly, the trial court's revocation of the defendant's probation and reinstatement of the suspended sentence was reversed and remanded for further proceedings. *Id.*

¶16. The record in the case *sub judice* reveals, and Smith does not deny, that he was served with a copy of the State's petition to revoke his suspended sentence at least five days before the hearing in open court and was given notice thereof. During the hearing, Smith, through his attorney, confessed to the petition filed by the State. The Appellant also acknowledged that he violated the terms of his probation. The trial court judge advised Smith that he was entitled to a hearing during which the State would be required to sufficiently establish that he violated the terms of his probation. However, Smith informed the court that he did not desire such a hearing. Thereafter, the court revoked Smith's probation and reinstated his suspended sentence. Based on this evidence, we find that the trial court did not deprive Smith of his due process guarantees. Although Smith alleges that the trial court failed to expressly warn him of the possibility that a subsequent guilty plea would result in the revocation of his probation, we refuse to read such a strict requirement into *Berdin*. Nothing in *Morrissey*, *Gagnon*, or Section 47-7-37 of the Mississippi Code Annotated requires otherwise.

¶17. Smith was aware of his prior misconduct when he entered his initial guilty plea. The court asked Smith if he had any questions about the guilty plea petition or if he had any prior felony convictions. Smith responded negatively to both questions posed by the court. Although Smith did not make an affirmative misrepresentation to the court in answer to these questions, neither did he fully inform the court of his

situation. The trial court adequately informed Smith of the terms and conditions of his probation and suspended sentence. Smith, who was represented by counsel, was given the opportunity to discuss the plea agreement with his attorney. It is also noteworthy that Smith entered a guilty plea to the later charge despite the fact that he was aware of the State's intentions to attempt to revoke his probation. Accordingly, this assignment of error is without merit.

## II. DID SMITH VOLUNTARILY AND INTELLIGENTLY PLEAD GUILTY TO CONSPIRACY TO DISTRIBUTE COCAINE?

¶ 18. Smith also asserts that he did not voluntarily and intelligently enter a guilty plea to the charge of conspiracy to distribute cocaine. As stated, he contends that the trial court failed to inform him of the possibility that his probation would be revoked if he entered a subsequent guilty plea to an offense he committed prior to being placed on probation. Based on the court's alleged failure to inform him of the possible revocation, Smith argues that this Court should set aside his initial guilty plea.

¶19. Before a defendant may plead guilty to a crime, he must be "advised about the nature of the crime charged against him and the consequences of the guilty plea." *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994). Rule 8.04 of the Uniform Circuit and County Court Rules provides that when the defendant notifies the court of his intent to plead guilty, "it is the duty of the trial court to address the defendant personally and to inquire and determine . . . [t]hat the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law. . . ." URCCC 8.04.

¶20. Smith relies on *Berdin v. State*, 648 So. 2d 73 (Miss. 1994) to support his contention that the trial court had an obligation to inform him of the possibility that a subsequent guilty plea could result in the revocation of his probation. As discussed above, the defendant in that case pled guilty and received a suspended sentence and probation. *Id.* at 75. Shortly thereafter, the defendant entered a guilty plea to an offense she committed prior to the court placing her on probation for the first offense. *Id.* After accepting her guilty plea to the second offense, the court immediately revoked the defendant's probation and reinstated the suspended sentence. *Id.* The defendant asserted that her second plea was not voluntarily and intelligently entered into because the court did not advise her of the possibility that her probation could be revoked based on the subsequent plea. *Id.* at 80. On appeal, the supreme court found that the defendant's assignment of error was procedurally barred because the defendant attempted to attack the validity of more than one judgment without filing separate motions as mandated by post-conviction relief statute. *Id.* However, in dicta, the court noted that the "failure of the trial judge to give any notice of the probation revocation rendered the plea of guilty to [the second offense] involuntary and unintelligent." *Id.*

¶21. In the case *sub judice*, Smith attacks the validity of his first guilty plea rather than the subsequent plea. During the hearing on the first guilty plea, the trial court judge advised Smith of his constitutional rights, including his right to plead not guilty, the maximum and minimum sentences for the offense, and questioned whether Smith understood the charges against him. After carefully examining Smith, the court found that the defendant was competent to enter a plea and that Smith freely, knowingly, and intelligently entered a plea of guilty. Although *Berdin* suggests that a trial court must inform a defendant of the possibility that his guilty plea may result in the revocation of a *previously* suspended sentence or period of probation, the supreme court did not hold that a trial judge has such an affirmative obligation when accepting the defendant's *initial* plea. *Berdin* implies that a trial judge must only advise the defendant during the acceptance of a subsequent plea that the particular plea may result in the revocation of probation he received for a previous plea.

However, when a trial court judge initially places a defendant on probation and suspends his sentence, the judge does not have to imaginatively consider and inform the defendant of every possible event that may occur in the future that could affect a defendant's probation. Rather, the judge must fairly, not fully, advise the defendant of the conditions of his probation.

¶22. While Rule 8.04 requires the trial court judge to inform the defendant of the nature of the charge and the consequences of the plea, the rule does not dictate that the judge must advise the defendant of every "but for" consequence that follows from a plea of guilty. Furthermore, there is no evidence that the judge was aware of the separate, pending charge against Smith when he imposed the terms and conditions of Smith's probation during the acceptance of Smith's initial plea. Thus, it would have been impossible for the trial judge to warn Smith that a subsequent guilty plea to the charge would violate the terms of his probation.

¶23. Based on the evidence before this Court, we find that Smith voluntarily and intelligently entered a guilty plea to the charge of conspiracy to distribute cocaine. The trial court adequately informed Smith of the nature of the charges against him and advised him of the consequences of entering a guilty plea. Contrary to Smith's assertion, the trial court judge does not have an obligation to consider a wide spectrum of events, within the defendant's knowledge yet unknown by the judge, and to explain the potential ramifications such events may have on the terms of the defendant's probation.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF DENIAL OF POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**